**UNITED STATES of America, Appellant,**

v.

**Eddie Lee GALLOWAY, Appellee.**

No. 90–3034.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 6, 1992.

Decided Sept. 17, 1992.

Robert Erickson, Dept. of Justice, Washington, D.C., argued (Michael D. Johnson and Robert L. Neighbors, Asst. U.S. Attys., Little Rock, Ark., on brief), for appellant.

Richard E. Holiman, Little Rock, Ark., argued, for appellee.

Before LAY,* Chief Judge, BRIGHT, Senior Circuit Judge, McMILLIAN, RICHARD S. ARNOLD,** JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, En Banc.

JOHN R. GIBSON, Circuit Judge, with whom FAGG, BOWMAN, WOLLMAN, MAGILL, LOKEN and HANSEN, Circuit Judges, join.

This case presents the issues of whether sentencing by considering relevant conduct, which has been called the cornerstone of the United States Sentencing Guidelines, is authorized by statute and permitted by the United States Constitution. The district court sentenced Eddie Lee Galloway to twenty-four months based on a single count of theft from interstate shipment under 18 U.S.C. § 659 (1988) after it held that the Constitution prevented it from considering other uncharged property theft offenses. A panel of this court affirmed the sentence without reaching the constitution-

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

** The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

al arguments, but held that consideration of the uncharged offenses under the relevant conduct guideline, United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(2) (Nov.1991), exceeded the statutory authority granted to the Sentencing Commission. We have heard the case en banc and hold that section 1B1.3(a)(2) is authorized by statute and does not violate the constitutional rights to indictment, jury trial, and proof beyond a reasonable doubt.

We recite the facts essentially as recounted by the panel in our earlier decision, *United States v. Galloway*, 943 F.2d 897 (8th Cir.1991), *vacated*, Order of November 20, 1991, adding other facts as we deem necessary. Galloway and W.J. Young were charged in a two-count indictment with stealing a truck-load of tires and transporting a stolen vehicle in interstate commerce on March 22, 1990. Galloway pled guilty to count one, theft from interstate shipment. The statutory maximum sentence for this offense is ten years. 18 U.S.C. § 659. Count two, charging transportation of a stolen motor vehicle in interstate commerce, in violation of 18 U.S.C. § 2312 (1988), was dismissed pursuant to a plea agreement. The latter charge would have called for a maximum penalty of five years.

The presentence report (PSR) valued the stolen goods at $37,000. PSR ¶¶ 20–21. Under the Guidelines, this amount ordinarily would have called for a base offense level of 10 and a sentencing range of 21–27 months for Galloway, based on Criminal History Category V. U.S.S.G. § 2B1.1; U.S.S.G. Ch. 5, Pt. A. The PSR, however, alleged that, "[f]rom December, 1988,

through March 22, 1990, . . . Galloway participated in an organization which stole approximately $1,009,950 in stolen goods which were moving in interstate commerce." PSR ¶ 11. It listed seven separate interstate property offenses for which the government had not charged Galloway and included these offenses in the sentencing calculation. *Id.* ¶¶ 13–19. Each offense involved the theft of truckloads of goods, which included shoes, clocks, tires, televisions, and baseball cards.[1] *Id.* The PSR also recommended enhancement for Galloway's alleged leadership role in offenses that required more than minimal planning. *Id.* ¶ 26. These adjustments nearly tripled Galloway's sentencing range. They put Galloway at offense level 19 with a criminal history category of VI, and called for a sentence of 63–78 months.[2]

Galloway objected. He contended that the alleged uncharged conduct could not be used to calculate his sentencing range under section 1B1.3(a)(2) of the Guidelines. The district court agreed, after making the following observation:

> The Court notes that yesterday it sentenced Mr. Galloway's co-defendant, Mr. W.J. Young, to five months imprisonment with two years of supervised release. Mr. Young had pled guilty to Count I of a two count indictment and the Government had moved the dismissal of Count II. The same situation that has occurred here. . . .
>
> I also note that the presentence reports in the two cases contain much identical language; indeed, the paragraphs that you talk about, 13 through 20 [detailing charged and uncharged conduct] are identical. . . .

1. The uncharged thefts were as follows: (1) December 9, 1988, a truckload of 14,840 pairs of shoes valued at $237,670; (2) April 28, 1989, 827 tires valued at $68,000; (3) June 30, 1989, a load of 1,339 tires valued at $75,000; (4) August 11, 1989, a load of 6,840 slippers and shoes valued at $126,000; (5) August 24, 1989, a load of 167 televisions valued at $100,000; (6) January 13, 1990, a load of 880 cases of baseball cards valued at $198,000; (7) January 19, 1990, a load of 1,104 clocks valued at $168,280. All of these loads of merchandise were sold or distributed, several to the same individual and with several coming into the hands of the same auction company. Much of the merchandise was recovered. PSR ¶¶ 13–19.

2. Young pled guilty under an identical plea agreement to Galloway's, and his PSR listed the same uncharged interstate property offenses as those listed in Galloway's PSR. However, Young's PSR concluded that the theft of the trailer and tires "was the only transaction of which Mr. Young . . . had knowledge." PSR ¶ 21. As a consequence, the PSR calculated Young's sentencing range based only on the offense charged in the indictment. Additionally, Young's PSR recommended a two-level reduction for acceptance of responsibility. Therefore, Young was assigned a sentencing range of only two to eight months, based on an adjusted offense level of 8 and a criminal history category of I.

. . . .

Now if the facts contained in the presentence report are true, then it is clear that the Defendant Young and Defendant Galloway are really poles apart in terms of their culpability, at least to the degree of their involvement in criminal activity. But the Government has chosen to place identical charges against these two defendants. It charged Mr. Young with the only crime that he committed, at least as reflected by the presentence report—that is, the March 22, 1990 theft.

But the Government has charged Mr. Galloway with only one of eight different crimes which it says he committed, and that was the least serious of the ones mentioned in the report. *And the only crime, of course, that Mr. Galloway has pled guilty to is the one in Count I— that is, the one that Mr. Young pled guilty to—but I gather the Government wishes the Court to sentence Mr. Galloway as if it had charged him with the eight thefts exceeding $1 million in value and as if he had been convicted of all those charges.*

Now this is a question. The Government could have charged him with all the criminal conduct that they mention in the report and he could have pled guilty or not guilty, and if he had pled not guilty he could have been tried and, if convicted, we would not be dealing with these problems. It would be absolutely clear what the factual basis for the sentence should be. *But the Government didn't choose to follow that path, and I gather it's because of the sentencing guideline laws. I don't think the Government views Mr. Galloway and Mr. Young as equal in culpability. I'm just getting the impression—I may be wrong—they are saying, "Why should we bother? Under the guidelines if he pleds* [sic] *guilty to one of these, then we will ask the Court to sentence him as if he had been convicted of all of them," and that, they say, is what the guidelines call for. And they may be right, but I*

*am resisting to a certain extent that idea.*

Sent. Tr. at 10–13 (emphasis added).

The district court went on to hold section 1B1.3(a)(2) unconstitutional as applied, reciting the following rationale:

[I]f you look at Amendment V to the Constitution you see that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

Now it says a crime, and the Supreme Court has interpreted crimes to mean anything that might subject one to the possibility of imprisonment for more than six months. And it also says no person shall be held to answer. Well, is Mr. Galloway being held to answer for that conduct here if it's established his sentence will be increased five, six years? Yes, I think if that crime is proved [at the sentencing hearing], he will be held to answer here.

Amendment VI says: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." In all criminal prosecutions. Are we engaged in a criminal prosecution here, or is it some sort of legerdemain? Are we converting this crime into a sentencing factor? It also says—that is, Amendment VI—that he has a right to be informed of the nature and cause of the accusation. Of course, that would have been done if Amendment V had been followed.

I am going to conclude as a matter of law that in this case the Government may not, in the posture of this record, enhance the sentence of the defendant by proving by a preponderance of the evidence the conduct and acts referred to in paragraphs 13 through 19 because I feel it would violate the defendant's constitutional rights. What we have here is what I have referred to as the Russianizing of our Constitution. The language is quite clear, but we can, by sophistry or otherwise treat it and ignore it and that's what happened in other countries. I don't want to see it happen here.

Sent. Tr. at 28–29. Accordingly, the court refused to permit the government to prove

the uncharged conduct.[3]

The district court determined that Galloway's base offense level of four should be adjusted by six points to reflect the $37,000 worth of property involved in the charged offense. *Id.* at 30. The district court found that an additional two-point upward adjustment was required because there was more than minimal planning, but that the offsetting two-level downward adjustment was appropriate because of Galloway's acceptance of responsibility. The court also reduced Galloway's criminal history classification from VI to V. It found that the PSR had incorrectly calculated this element by relying on the uncharged conduct to determine that Galloway's offense behavior occurred while he was on parole and within two years of his imprisonment for a prior conviction. *Id.* at 31. Galloway's total offense level of 10 with a criminal history category of V called for a sentencing range of 21 to 27 months' imprisonment, and the district court sentenced Galloway to 24 months. *Id.* at 32.

On appeal, the panel of this court refused to reach the constitutional issues, but held that the United States Sentencing Commission exceeded its statutory authority in promulgating the uncharged conduct provisions of section 1B1.3(a)(2) to encompass separate uncharged property crimes such as those that Galloway was claimed to have committed. 943 F.2d at 899. Our panel stated that when asked, the government could not provide statutory authority in the enabling act or elsewhere to support either section 1B1.3(a)(2) or the grouping provisions of U.S.S.G. § 3D1.2(d). *Id.* at 901. We granted rehearing en banc and now reverse.

In 1984, Congress established the United States Sentencing Commission. Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 217(a), 98 Stat. 1837, 2017–27 (codified as amended at 28 U.S.C.A. §§ 991–998 (West Supp.1992)). Congress charged the Commission with, among other things, promul-

gating guidelines and policy statements for use in determining and implementing criminal sentences. 28 U.S.C. § 994(a). Thereafter, the Commission promulgated a comprehensive set of guidelines and policy statements, including the guideline at issue here, entitled "Relevant Conduct," U.S.S.G. § 1B1.3. The relevant conduct guideline reads:

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

(4) any other information specified in the applicable guideline.

(b) *Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence).* Factors in Chapters Four and Five that estab-

---

**3.** The Assistant United States Attorney first announced that he was ready to put the FBI agents who had investigated the case on the stand to prove such conduct. In response to the court's statement that it would consider only evidence

that would be admissible at trial had additional charges been filed, the Assistant United States Attorney stated that he would desire to present such testimony.

lish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

The Chairman of the Sentencing Commission, United States Circuit Judge William W. Wilkins, Jr., and General Counsel John R. Steer have called the relevant conduct guideline "the cornerstone of the federal sentencing guideline system." William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495, 496 (1990) [hereinafter Wilkins & Steer]. In promulgating the relevant conduct guideline, the Commission adopted a so-called "real offense" philosophy, since section 1B1.3 calls for sentencing based upon the actual conduct engaged in, rather than only upon the offense for which the defendant was convicted. *See* U.S.S.G. § 1B1.3, comment. (backg'd.) (uncharged conduct may enter into determination of applicable guideline sentencing range). To this end, subsection (a)(2) of the relevant conduct guideline requires courts, in determining an offender's base offense level, to include "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Section 1B1.3(a)(2) applies to all offenses that ordinarily would be grouped together pursuant to U.S.S.G. § 3D1.2(d) for purposes of calculating the applicable sentencing range. Section 1B1.3 comment. (n. 2). "Application of [section 1B1.3(a)(2)] does not require the defendant, in fact, to have been convicted of multiple counts," *id.*, and "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." *Id.* at backg'd, ¶ 1. Thus, relevant conduct must be considered under section 3D1.2(d) whenever:

the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d). Galloway's offense, theft from interstate shipment, falls within the relevant conduct guideline, including its interplay with section 3D1.2(d) (incorporating by reference U.S.S.G. § 2B1.1, the guideline applicable to thefts). The panel opinion is based specifically on the determination that U.S.S.G. § 1B1.3(a)(2) is without statutory support and, therefore, may not be applied in determining Galloway's sentence.

## I.

■ We turn first to whether statutory authority exists for the adoption of a relevant conduct guideline. We review this question of law de novo. We begin our discussion by recognizing that the Sentencing Guidelines now provide the methodology for determining sentences within the statutory maximums.

Historically, courts have been allowed to consider uncharged criminal conduct in determining the sentence a convicted defendant should receive within the maximum penalty permitted by law. *See Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). *See also* U.S.S.G. § 5G1.1(a) (a guideline sentence may not exceed the statutory maximum). While the issue of statutory authorization has been raised on only a limited number of occasions, and we will discuss these cases presently, there are numerous decisions from most of the circuits, including ours, allowing sentencing judges to consider, under the Guidelines, uncharged as well as charged conduct.[4] The authority Congress

---

4. Cases from outside this circuit include, for example, *United States v. Gerante*, 891 F.2d 364, 368–69 (1st Cir.1989); *United States v. Bedoya*, 878 F.2d 73, 75–76 (2d Cir.1989); *United States v. Williams*, 880 F.2d 804, 805–06 (4th Cir.1989); *United States v. Gordon*, 876 F.2d 1121, 1125–26 (5th Cir.1989); *United States v. Ykema*, 887 F.2d 697, 700 (6th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989); *United States v. Restrepo*, 903 F.2d 648, 652–53 (9th Cir.1990); *United States v. Rutter*, 897 F.2d 1558, 1561–63 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d

has given the Sentencing Commission to promulgate guidelines is extremely broad. The Commission is to enact guidelines that determine "the appropriate length of a term ... of imprisonment...." 28 U.S.C. § 994(a)(1)(B). The Commission is directed to "establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code." 28 U.S.C. § 994(b)(1). Additionally, 18 U.S.C. § 3661 (1988) states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See also* 18 U.S.C. § 3553(a)(2) (1988) ("The court, in determining the particular sentence to be imposed, shall consider ... the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense....").

Section 994(c)(2) of title 28 allows the Commission to promulgate guidelines that take into account "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." More generally, the preceding language in section 994(c) orders the Sentencing Commission to "consider whether [certain factors later enumerated within the statute], *among others*, have any relevance" in establishing guidelines and policy statements to determine sentences. 28 U.S.C. § 994(c) (emphasis added). The open-ended language "among others" invites the Commission to consider sentencing factors that Congress failed to specifically list. *See* S.Rep. No. 98–225, 98th

Cong., 2d Sess. at 169 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3352 ("The Sentencing Commission is also required under subsection (c) [of section 994] to determine whether other factors not specifically listed are relevant to the sentencing decision.").

We are satisfied that within the broad grants of authority to the Commission, this specific statutory language of section 994(c)(2) gives the Commission full authority to adopt a relevant conduct guideline, although it certainly cannot be said that the Commission was required to do so. *Chevron U.S.A.; Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), directs us to consider two questions as we review the Commission's construction of the statutory scheme which it administers:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

60 (1990); *United States v. Alston*, 895 F.2d 1362, 1371–72 (11th Cir.1990). The Ninth Circuit has, however, held it to be unfair for a district court to enhance a sentence based on charges dismissed pursuant to a plea agreement. *United States v. Fine*, 946 F.2d 650, 652 (9th Cir.1991), *reh'g en banc granted*, 963 F.2d 1258 (9th Cir.1992).

Cases from this circuit include *United States v. Lawrence*, 915 F.2d 402, 406–08 (8th Cir. 1990); *United States v. Hoelscher*, 914 F.2d 1527, 1544 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *United States v. Streeter*, 907 F.2d 781, 791 (8th Cir.

1990); *United States v. Johnson*, 906 F.2d 1285, 1290–91 (8th Cir.1990); *United States v. Sleet*, 893 F.2d 947, 948–49 (8th Cir.1990); *United States v. Cohoon*, 886 F.2d 1036, 1037–38 (8th Cir.1989) (per curiam); *United States v. Allen*, 886 F.2d 143, 144–46 (8th Cir.1989); *United States v. Ehret*, 885 F.2d 441, 445 (8th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *United States v. Williams*, 879 F.2d 454, 457 (8th Cir.1989); *United States v. Natal–Rivera*, 879 F.2d 391, 393 (8th Cir. 1989); *United States v. Mann*, 877 F.2d 688, 690 (8th Cir.1989).

We believe that the reference to "circumstances ... which ... aggravate the seriousness of the offense," 28 U.S.C. 994(c)(2), is direct language showing clear intent, under *Chevron,* to support enactment of U.S.S.G. § 1B1.3(a)(2). Even if it is not so clear, we have no doubt that, taken with the more general language in section 994(c) and 18 U.S.C. § 3553(a)(2) and § 3661, there is sufficient and permissible statutory underpinning to support section 1B1.3(a)(2) and its required consideration of all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).[5] As specifically applied in this case, there is a basis for considering that interstate theft is aggravated by the fact that it is but one of a series of interstate thefts, the purpose of all of which was to steal truckloads of merchandise and sell them. In promulgating a guideline to authorize consideration of such relevant conduct, the Commission was acting under the authority given it by section 994(c)(2).

We also recognize that the Commission has submitted to Congress three different amendments involving the relevant conduct guideline, *see* 53 Fed.Reg. 15,529, 15,530–31 (1988) (incorporating by reference the temporary amendments of Jan. 15, 1988, as printed in 53 Fed.Reg. 1285, 1287–1280 (1988)); 54 Fed.Reg. 21,347, 21,350 (1989); 55 Fed.Reg. 19,187, 19,190–91, 19,194 (1990), all of which have been approved. Hence, Congress has had three opportunities to reject section 1B1.3, but has not done so.

Three other circuits have concluded that statutory authority exists for enacting a relevant conduct guideline. The Fifth Circuit in *United States v. Thomas,* 932 F.2d 1085 (5th Cir.1991), *cert. denied,* —— U.S. ——, ——, ——, 112 S.Ct. 264, 428, 887, 116 L.Ed.2d 217, 447, 791 (1991 & 1992), stated that "section 994(c)(2) of Title 28 provides that the Commission *must* take into account 'the circumstances under which the offense was committed which mitigate[ ] or aggravate[ ] the seriousness of the offense.'" *Id.* at 1089 (emphasis added). The court compared the statute with section 1B1.3(a)(1) and found similarity between the two provisions, noting that any differences between them were "superficial." *Id.* The discussion concerning the Commission's statutory authority to promulgate section 1B1.3 continued:

Congress made open-ended its list of factors for the Commission to consider. Section 994(c) thus provides that the Commission "shall consider whether the following matters, *among others,* have any relevance." (Emphasis added.) Even if the plain language of the Sentencing Reform Act did not track the language of the guidelines, any reasonable deviation is justified by the nonexclusive nature of Congress's grant of authority to the Commission.

*Id.* Similarly, the Seventh Circuit in *United States v. Ebbole,* 917 F.2d 1495, 1501 (7th Cir.1990), rejected the argument that the Commission exceeded its statutory authority in enacting section 1B1.3. *See also United States v. Rodriguez–Luna,* 937 F.2d 1208, 1211 n. 3 (7th Cir.1991) (same). Most recently, the Sixth Circuit has stated that 28 U.S.C. § 994(c)(2) provides authority for promulgating a relevant conduct guideline. *United States v. Davern,* 970 F.2d 1490, 1495 n. 6 (6th Cir.1992).

Similarly, the dissent's reliance on *United States v. Thompson/Center Arms Co.,* —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (U.S.1992), is misplaced, since the Supreme Court there applied the rule of lenity to a statute it concluded was ambiguous, ambiguity being a necessary predicate for such analysis. Our conclusion that there is statutory authority for the Guideline precludes any argument that the statute is ambiguous.

---

**5.** The dissent arguing lack of statutory support is critical of the application of *Chevron* to our analysis. This circuit en banc, as well other circuits, has applied *Chevron* in considering guideline cases. *United States v. Kelley,* 956 F.2d 748 (8th Cir.1992) (en banc); *United States v. Shabazz,* 933 F.2d 1029 (D.C.Cir.1991); *United States v. Doe,* 934 F.2d 353, (D.C.Cir.1991); *United States v. Harper,* 932 F.2d 1073 (5th Cir., 1991); *United States v. Lewis,* 896 F.2d 246 (7th Cir.1990); *United States v. Denardi,* 892 F.2d 269 (3d Cir.1989).

We are unconvinced by the arguments that there is no statutory authority to support consideration of relevant conduct in section 1B1.3. Chief Judge Merritt of the Sixth Circuit has argued that section 1B1.3 contravenes 18 U.S.C. § 994(*1*), which authorizes incremental penalties and requires conviction of the offense for which the sentence is imposed. *Davern*, at 1506–09 (Merritt, C.J., dissenting); *United States v. Miller*, 910 F.2d 1321, 1329–30 (6th Cir. 1990) (Merritt, C.J., dissenting), *cert. denied*, — U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Section 994(*l*), by its plain language, discusses incremental penalties for multiple *convictions*. We are persuaded by Judge Flaum's reasoning in *Ebbole*, 917 F.2d at 1501, that section 994(*l*) contains no language indicating that it is to be read restrictively or exclusively, and that it does not preclude the consideration of uncharged conduct in section 1B1.3(a)(2).

We also reject arguments based on the goal of avoiding sentencing disparities as a basis for finding the relevant conduct guideline to be contrary to statute. The argument is too diffuse to compel a conclusion that section 1B1.3 lacks statutory support. Further, to use the disparity argument to set aside the guideline is to ignore the statutory language in 18 U.S.C. § 3661, which, as we have noted above, clearly allows a judge to consider "background, character, and conduct of a person" when determining a sentence.

We conclude that there was sufficient statutory authority for the Commission to promulgate section 1B1.3 of the Guidelines.

## II.

■ We now turn to whether the Constitution bars consideration of uncharged conduct in sentencing. The panel did not reach the constitutional issues because its decision on the statutory issues made it unnecessary. However, we cannot avoid examining the district court's ruling that imposing a sentence based on uncharged, separate acts pursuant to section 1B1.3 would violate Galloway's rights to indictment, jury trial, confrontation of witnesses, and proof beyond a reasonable doubt.

The government asserts that the constitutional rights governing trials simply do not apply in the context of sentencing. Once the defendant is convicted, the district court is free to consider facts not charged in the indictment, not presented to a jury, not tested by cross examination, and not proved beyond a reasonable doubt. Galloway retorts that section 1B1.3 is unconstitutional as applied because it allows prosecutors to evade the constitutional protections guaranteed to criminal defendants. He asserts that it is unconstitutional to increase his sentence by up to five years for conduct of which he was never tried and convicted.

The constitutional arguments raised here are conclusively answered by the Supreme Court's opinion in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). There, the Court addressed a Pennsylvania statute that required a judge to impose a minimum five-year sentence for the commission of certain felonies upon a finding that the defendant " 'visibly possessed a firearm' " when committing the offense. *Id.* at 81, 106 S.Ct. at 2413. Like the Sentencing Guidelines, the Pennsylvania statute limited the sentencing judge's discretion; it assigned a predetermined, mandatory penalty based on a particular finding. Also like the Guidelines, the statute's application was restricted to the sentencing phase; it explicitly stated that the firearm finding was not an "element of the crime" of conviction and thus was to be established by a preponderance of the evidence. *Id.* at 81 n. 1, 106 S.Ct. at 2414 n. 1 (citing 42 Pa.Cons.Stat. § 9712 (1982)).

■ The Court firmly rejected the argument that the Pennsylvania statute violated due process by defining the visible possession of a firearm as a sentencing factor rather than as an element of the crime. The Court observed that it rejected in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the "claim that whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove

that fact beyond a reasonable doubt." *McMillan*, 477 U.S. at 84, 106 S.Ct. at 2415 (citing *Patterson*, 432 U.S. at 214, 97 S.Ct. at 2329). The constitutional guarantee of due process requires only that the prosecution prove beyond a reasonable doubt those elements that the legislature has included in the definition of the charged offense. *Id.* at 85, 106 S.Ct. at 2415.

The *McMillan* Court acknowledged that there are constitutional limits on a legislature's ability to define offenses. *Id.* at 85–86, 106 S.Ct. at 2416. "[I]n certain limited circumstances [the] reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged." *Id.* at 86, 106 S.Ct. at 2416. The Court concluded that the Pennsylvania statute did not transgress constitutional limits, however, because it did not discard the presumption of innocence, and did not alter the maximum sentence for the crime of conviction or create a separate offense carrying a separate penalty. *Id.* at 87–88, 106 S.Ct. at 2417. The Pennsylvania statute "operates solely to *limit the sentencing court's discretion in selecting a penalty within the range already available to it* without the special finding of visible possession of a firearm." *Id.* at 88, 106 S.Ct. at 2417 (emphasis added).

The Court acknowledged the "specter" of legislatures restructuring existing crimes to evade the reasonable-doubt requirement. *Id.* at 89, 106 S.Ct. at 2418. It concluded that such evasion had not occurred in Pennsylvania because that state's legislature had not changed the definition of any existing offense; rather, it singled out one factor—the instrumentality used in the commission of the felony—that traditionally has been considered by the sentencing court and "dictated the precise weight to be given to that factor if the instrumentality is a firearm." *Id.* at 89–90, 106 S.Ct. at 2418.

The Sentencing Guidelines do not differ from the Pennsylvania statute in any manner material to a constitutional inquiry. *United States v. Restrepo*, 946 F.2d 654, 657 (9th Cir.1991) (en banc), *cert. denied*, — U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). They both are directed to sentencing within statutory maximums, and apply only after guilt is determined. Thus, *McMillan* must guide our analysis.

■ Historically, a sentencing judge has exercised "a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York*, 337 U.S. at 246, 69 S.Ct. at 1082. The judge also traditionally has "heard evidence and found facts without any prescribed burden of proof at all." *McMillan*, 477 U.S. at 91, 106 S.Ct. at 2419 (citing *Williams*, 337 U.S. 241, 69 S.Ct. 1079). This practice does not violate the defendant's constitutional rights because "sentencing takes place only after a defendant has been adjudged guilty beyond a reasonable doubt. Once the reasonable-doubt standard has been applied to obtain a valid conviction, 'the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him.'" *McMillan*, 477 U.S. at 92 n. 8, 106 S.Ct. at 2419 n. 8 (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)).

The Sentencing Guidelines, like the Pennsylvania statute, have done nothing more than take traditional sentencing factors and accord them a "predetermined effect." *Restrepo*, 946 F.2d at 657. Due process is not violated simply because a legislature has restricted the court's discretion and provided it with "additional guidance." *See McMillan*, 477 U.S. at 92, 106 S.Ct. at 2419. Like the Pennsylvania statute, the Sentencing Guidelines have not negated the presumption of innocence; the prosecution still must prove guilt beyond a reasonable doubt with regard to all elements of the crime of conviction. *Cf. Mullaney v. Wilbur*, 421 U.S. 684, 686, 704, 95 S.Ct. 1881, 1883, 1892, 44 L.Ed.2d 508 (1975) (overturning on due process grounds a state murder statute that allowed malice to be presumed upon proof that the homicide was intentional and unlawful, unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation). *See also Patterson*,

432 U.S. at 214–16, 97 S.Ct. at 2329 (discussing *Mullaney* presumption and rejecting due process challenge to New York statute not containing such a presumption).

Also like the Pennsylvania statute, the Sentencing Guidelines do not alter the maximum statutory penalties for the crimes of conviction. The Guidelines merely prescribe sentencing ranges that fall within the statutory limits. Before the Guidelines, the sentencing court had the discretion to sentence a defendant up to the statutory maximum. A due process violation does not arise simply because the Guidelines restrict the exercise of judicial discretion. *United States v. Nunley,* 873 F.2d 182, 186 (8th Cir.1989); *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.), *cert. denied,* 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989).

The fundamental issue before us is the determination of a sentence for the crime charged, which carries the maximum sentence of ten years. That the guidelines allow relevant conduct, including uncharged conduct, as a sentencing factor or consideration, *McMillan,* 477 U.S. at 86, 91, 106 S.Ct. at 2416, 2419, to determine a sentence within the statutory maximum of ten years does not alter the nature of the issue. A theft that is but one of a chain of eight similar thefts is far different from a single theft in interstate commerce. This is "a circumstance of [the] offense," *McMillan,* 477 U.S. at 92, 106 S.Ct. at 2419, that bears directly upon its seriousness, and even though uncharged, may properly be considered in determining the length of that sentence within the statutory range. The guidelines do no more than adopt the practice of considering related activities in

imposing sentences, a fundamental principle of sentencing in this country for many years. This does not violate the plain language of the constitutional provisions, and is certainly justified by *Williams* and *McMillan.*

The dissent arguing constitutional infirmity of the guidelines makes much of the express language of the Fifth and Sixth Amendments. The argument stumbles over its presumption that Galloway is being punished for the uncharged conduct, since in reality Galloway is being punished for the one charged theft. The uncharged conduct is used only as a measure of the severity of the crime for which he has been charged and for which he has pleaded guilty.

Also like the Pennsylvania statute, the Sentencing Guidelines do not create separate offenses with separate penalties. The Guidelines operate only at the sentencing stage, after the accused has been afforded the full panoply of constitutional protections and found guilty beyond a reasonable doubt. The Guidelines are a direct reflection of the bifurcated nature of our criminal process, which separates trial and conviction from sentencing. Although some may consider it unfair to sentence on the basis of offenses for which a defendant has not been charged or convicted,[6] *see Ebbole,* 917 F.2d at 1496, the Supreme Court has "long held that this practice does not violate due process." *Id.* (citing *Williams,* 337 U.S. 241, 69 S.Ct. 1079). In *Williams,* the Court upheld a sentence based in part on evidence not introduced at trial that the defendant had committed thirty burglaries for which he had never been convicted.

---

**6.** Numerous cases in this circuit and others hold that a sentence may consider uncharged conduct, charges that were dismissed, *see, e.g., Thomas,* 932 F.2d at 1088 n. 1; *Miller,* 910 F.2d at 1327; *United States v. Streeter,* 907 F.2d 781, 791 (8th Cir.1990), or charges on which the defendant was actually acquitted, *see United States v. Olderbak,* 961 F.2d 756, 764–65 (8th Cir.1992); *United States v. Averi,* 922 F.2d 765, 766 (11th Cir.1991) (per curiam); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 179–82 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United*

*States v. Isom,* 886 F.2d 736, 738–39 (4th Cir. 1989). *Contra United States v. Brady,* 928 F.2d 844, 851–52 (9th Cir.1991).

A sentence that considers charges on which there was acquittal is permissible because of the differing levels of proof needed for conviction and sentencing. *Mocciola,* 891 F.2d at 16–17. Despite a jury's decision that the defendant is not guilty beyond a reasonable doubt, the sentencing court may decide that the evidence of guilt is strong enough to meet the preponderance of the evidence standard applied at sentencing. *Id. See also Rodriguez–Gonzalez,* 899 F.2d at 182.

337 U.S. at 244, 252, 69 S.Ct. at 1081, 1085. If legislatures may standardize sentencing, as *McMillan* held, and if courts may impose sentences based partly on conduct for which the defendant has not been convicted, as *Williams* held, then it logically follows that Congress may authorize establishment of predetermined penalties for certain sentencing factors if the government establishes those factors with sufficiently reliable evidence. *See Ebbole,* 917 F.2d at 1497.

■ We conclude that section 1B1.3, as applied here, does not transgress the limits of due process. Because a defendant's uncharged crimes are treated as sentencing factors, the rights to indictment, jury trial, and proof beyond a reasonable doubt simply do not come into play.[7] *McMillan* explicitly rejected the argument that the sentencing phase requires a more stringent standard of proof than a preponderance of the evidence. "Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." 477 U.S. at 91, 106 S.Ct. at 2419. *United States v. Malbrough,* 922 F.2d 458, 464 (8th Cir.1990) (preponderance of the evidence standard to be applied at sentencing), *cert. denied,* — U.S. ——, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991). *See also United States v. Lam Kwong-Wah,* 966 F.2d 682, 685–88 (D.C.Cir.1992). *McMillan* also rejected, as "merit[ing] little discussion," the claim that the Pennsylvania statute denied a defendant's right to a trial by jury. *Id.* at 93, 106 S.Ct. at 2420. "[T]here is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." *Id.*

Our conclusion that it is constitutionally permissible to factor uncharged conduct into the sentencing calculus is further bolstered by the opinions of the Third, Seventh, and Ninth Circuits in *United States v. Mobley,* 956 F.2d 450 (3d Cir.1992), *Ebbole* and *Restrepo.* All three of these decisions rest on an interpretation of *McMillan,* and all conclude that a sharp distinction exists between conviction and sentencing. "At the sentencing stage ... a convicted criminal is entitled to less process than a presumptively innocent accused.... [O]nce convicted, a defendant has a liberty interest in the correct application of the Guidelines within statutory limits, nothing more and nothing less." *Mobley,* 956 F.2d at 455 (citing *McMillan,* 477 U.S. 79, 106 S.Ct. 2411, and *Restrepo,* 946 F.2d at 659).

■ The legislature's definition of the offense is usually dispositive in determining which facts must be proved beyond a reasonable doubt. *McMillan,* 477 U.S. at 85, 106 S.Ct. at 2415. Due process does impose certain limits, however. In *McMillan,* the Court suggested that a sentencing scheme could violate due process if the sentencing factors exposed the defendant to "greater or additional punishment" beyond that provided under the statute of conviction. *Id.* at 88, 106 S.Ct. at 2417. That problem did not exist with the Pennsylvania statute because a finding that the defendant visibly possessed a firearm during the commission of the specified felony would result only in raising the defendant's sentence to a minimum of five years. *Id.* The specified felonies all carried maximum sentences of 10 and 20 years. *Id.* at 87, 106 S.Ct. at 2417. Thus, the Pennsylvania statute "gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." *Id.* at 88, 106 S.Ct. at 2417.

■ It is clear that the Constitution limits a legislature's ability to designate some factors as elements of the crime and others as sentence enhancers. *See, e.g., Mobley,* 956 F.2d at 458 (indicating that Congress and the Commission do not have free rein; *McMillan* "clearly envisioned limits"). Citing the Court's implied disapproval of a

---

7. The district court also ruled that Galloway had the right to confrontation during sentencing. We need not discuss this issue, however, as the Assistant United States Attorney stated that he was prepared to present the testimony of the FBI agents and other witnesses to prove the uncharged thefts were part of a common scheme. This issue has been considered by the court en banc in *United States v. Wise,* 976 F.2d 393 decided this day, and our decision in *Wise* will guide the district court in further proceedings.

sentencing factor that is "tailored" to be "a tail which wags the dog of the substantive offense," *McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417, the Third, Seventh and Ninth Circuits agree that due process may be violated if the punishment meted out following application of the sentencing factors overwhelms or is extremely disproportionate to the punishment that would otherwise be imposed. *See United States v. Trujillo*, 959 F.2d 1377, 1382 (7th Cir.1992) ("extreme" disparity between sentence received and sentence for charged crime may require increased due process protections at sentencing), *reh'g granted*, Apr. 20, 1992; *Mobley*, 956 F.2d at 456 (*McMillan* leaves open possibility that sentencing factor may improperly cause "disproportionate impact"); *Restrepo*, 946 F.2d at 659 (if sentencing factor has "extremely disproportionate effect," due process may require proof by more than a preponderance of the evidence).

■ Any due process boundaries have not been breached in this case. Consideration of the seven uncharged thefts increases Galloway's sentencing range from 21–27 months to 63–78 months. Although his term of punishment would be almost tripled following the proper application of section 1B1.3, we do not believe that the impact of this guideline section is so extreme or overwhelming as to raise due process concerns. In *United States v. Payne*, 940 F.2d 286 (8th Cir.1991), *cert. denied*, —— U.S. ——, ——, 112 S.Ct. 616, 1589, 116 L.Ed.2d 638, 118 L.Ed.2d 307 (1992), we rejected a constitutional challenge when the application of sentencing factors doubled the sentencing ranges of two defendants and nearly tripled the range of another. 940 F.2d at 292–93; *id.* at 294 (Heaney, J., dissenting). *Cf. United States v. Townley*, 929 F.2d 365, 369–70 (8th Cir.1991) (stating in dictum that sevenfold increase in sentence might require

proof at sentencing by more than a preponderance of the evidence).

Decisions of other circuits in similar cases are in agreement. *See Trujillo*, 959 F.2d at 1382 (near doubling of sentencing range, with actual increase of 53 months, is permissible); *Restrepo*, 946 F.2d at 661 (increase in sentence of 12–20 months based on application of sentencing factors does not present situation of " 'tail which wags the dog of the substantive offense' "); *Ebbole*, 917 F.2d at 1496, 1501 (approving increase in sentencing range from 27–33 months to 92–115 months).

In *United States v. Kikumura*, 918 F.2d 1084 (3d Cir.1990), the district court *departed* from the Sentencing Guidelines based on factors not taken into account by the Guidelines, resulting in a twelve-fold increase in the sentence, from 27–33 months to 360 months. *Id.* at 1089. The Third Circuit held that such a radical increase required application of the clear and convincing standard at sentencing. *Id.* at 1101–02. It reduced the defendant's sentence, concluding that a sentencing range of 210 to 262 months (representing an approximate eight-fold increase) was warranted. *Id.* at 1110–19. We are not confronted with an increase of *Kikumura*'s magnitude (either as rejected or as approved by the Third Circuit). We see no reason to conclude that the application of section 1B1.3 has created a situation in which the "tail [is] wag[ging] the dog of the substantive offense."

The panel decision, which we now reverse, specifically limits consideration of unconvicted conduct to determining an appropriate sentence within the guideline range. The shortcoming of this approach is that it effectively reads out of the Guidelines those sections dealing with relevant conduct and gives effect only to those provisions dealing with the offense of conviction.[8] There is simply no support for this

---

8. The dissent arguing constitutional infirmity asserts Galloway possesses a liberty interest "in the precise range of sentence obtained by guideline methodology," and when the sentence may be increased several fold, due process considerations apply and may require a heightened burden of proof. The argument is related to that made by dissents in *Mobley*, 956 F.2d at 462 (Mansman, J., dissenting), and *Restrepo*, 946 F.2d at 665 (Norris, J., dissenting). *See also Miller*, 910 F.2d at 1329–33 (Merritt, C.J., dissenting). The shortcoming of these arguments is that they are based on the presumption that the guideline range for the offense of conviction

truncated reading of the Guidelines. We must consider the Guidelines as a whole.

### III.

Having concluded that there is statutory authorization for the relevant conduct guideline and that it does not violate the Constitution, some further words are in order.

Other circuits have seen fit to comment that the application of the relevant conduct guideline, when it results in significant increases in sentences, such as here, might discourage defendants from pleading guilty. *See Ebbole*, 917 F.2d at 1501; *Miller*, 910 F.2d at 1332–33 (Merritt, J., dissenting); *United States v. Frederick*, 897 F.2d 490, 491 n. 1 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 171, 112 L.Ed.2d 135 (1990). We recognize the danger that United States Attorneys may seek indictments for less serious offenses that are easier to prove and then seek substantially increased sentences based on the uncharged conduct. Control over this sentencing practice rests in the hands of the district judge. *See* Wilkins & Steer, *supra*, at 500. Although the Guidelines certainly channel the court's discretion in sentencing, they also underscore the significant responsibility that remains with the district judge. When, as in a case like this, a simple charge of one theft triggers a claim by the government that the defendant committed seven other thefts that must be considered in sentencing, we can expect that defendant's counsel will interpose vigorous objections, as indeed occurred here. The district court must resolve, as questions of fact, those issues raised in the relevant conduct guideline, namely: other (1) "acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission, ... preparation, for, ... or in the course of attempting to avoid detection or responsibility, ... or that otherwise were in the furtherance of an offense," or (2) "acts [and] omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1) and (2).

It is not, as Judge Merritt suggested in his *Miller* dissent, that the United States Attorney may seek indictments for less serious, easy-to-prove offenses and "then expand them in the probation office." 910 F.2d at 1332. Any expansion can be made only by the district court. Section 6A1.3 of the Sentencing Guidelines and its commentary require that the court "shall resolve disputed sentencing factors in accordance with 'Rule 32(a)(1)' of the Federal Rules of Criminal Procedure." The commentary makes clear that "[t]he sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." U.S.S.G. § 6A1.3 comment.

When uncharged conduct is alleged as relevant conduct to substantially increase the sentencing range, district judges are authorized to require the United States Attorney to undertake the burden of presenting evidence to prove that conduct. In the final analysis, the determination of

---

alone gives rise to the liberty interest and not a guideline determination considering all of the factors, including relevant conduct. This argument was answered most ably by Judge Wiggins in *Restrepo*:

> However, we emphasize that the convicted defendant's liberty interest is not an interest in the maximum guideline sentence set by the offense of conviction alone, as the dissent maintains. The Supreme Court has recognized that due process protects a defendant's interest in fair sentencing, but has emphasized in the same cases that the interest is not defined as a liberty interest in a sentence below the statutory maximum.... The statute for the offense of conviction sets the con-

stitutional parameters of a possible sentence. Once those limits are established by a valid conviction on proof beyond a reasonable doubt, the defendant's liberty interest has been greatly reduced. However, factfinding is still necessary under some legislative schemes to set the sentence accurately within statutory limits, such as the Pennsylvania statute in *McMillan* and the Guidelines. The teaching of *McMillan* is that, as a general matter, due process is satisfied by a preponderance of the evidence standard of proof for that factfinding. 477 U.S. at 92, 106 S.Ct. at 2419.

*Restrepo*, 946 F.2d at 659 (emphasis added).

what is relevant conduct is a factual question to be decided by the district judge. The record in this case demonstrates that the Assistant United States Attorney was prepared to assume the appropriate burden and to present evidence of the uncharged conduct before the district court in the sentencing proceedings. The district court foreclosed such efforts by its ruling on the constitutional issues. We are satisfied that on remand, the sentencing inquiry will be conducted according to such standards.[9]

It is likely that if such procedures are required by district judges, any tendencies of United States Attorneys to charge "light" and attempt to sentence "heavy" will be curbed. Indeed, requiring proof to support such substantial increases at the sentencing phase may well cause government attorneys to conclude that the better course is to charge the heavier offenses in the trial of their case.

We also observe that defense counsel in negotiating pleas can and should ascertain the approach the government plans to take in sentencing. When the government seeks substantial increases based on uncharged offenses, the defense attorneys can act accordingly.

 Before such sentencing proceedings, the district court can notify the parties that it will require proof of uncharged conduct. At the hearing, the district court may determine the sufficiency of such evidence and whether it meets the preponderance of evidence standard. Finally, the court must make the ultimate decision as to whether the conduct is relevant in terms of sentencing enhancement, a decision which involves a specific inquiry into the factors enumerated in section 1B1.3(a).

We remand for resentencing in accordance with this opinion.

BEAM, Circuit Judge, with whom LAY and BRIGHT, Senior Circuit Judges and McMILLIAN, Circuit Judge, join, dissenting.

I respectfully dissent. With the promulgation of guideline section 1B1.3(a)(2), the Sentencing Commission has created sentencing policy without authority from Congress.

### A.

In 1984, Congress established the United States Sentencing Commission. Sentencing Reform Act of 1984, Pub.L. No. 98-473, § 217(a), 98 Stat. 1837, 2017-27 (codified as amended at 28 U.S.C. § 991-998 (1988)). Congress charged the Commission, among other things, with promulgating guidelines and policy statements for use in determining and implementing criminal sentences. 28 U.S.C. § 994(a). Thereafter, the Commission promulgated a comprehensive set of guidelines and policy statements, including the guideline at issue here, entitled "Relevant Conduct," U.S.S.G. § 1B1.3. The relevant conduct guideline reads:

*Relevant Conduct (Factors that Determine the Guideline Range)*

(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that of-

---

9. The commentary to section 6A1.3 states:
 The court's resolution of disputed sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair.... An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.

*See United States v. Fatico,* 603 F.2d 1053, 1057 n. 9 (2d Cir.1979). The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.
U.S.S.G. § 6A1.3 comment.

fense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions; and

(4) any other information specified in the applicable guideline.

(b) *Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence).* Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

The Chairman of the Sentencing Commission, United States Circuit Judge William W. Wilkins, Jr., and General Counsel John R. Steer have called the relevant conduct guideline "the cornerstone of the federal sentencing guideline system." William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal*

*Sentencing Guidelines,* 41 S.C.L.Rev. 495, 496 (1990) (hereinafter Wilkins & Steer). In promulgating the relevant conduct guideline, the Commission adopted a so-called "real offense" philosophy. *See* U.S.S.G. § 1B1.3, comment. (backg'd.). In other words, the Commission sought to punish offenders for "the actual conduct in which the defendant engaged regardless of the charges for which he was indicted or convicted." *See* U.S.S.G. Ch. 1, Pt. A.4(a), p.s.[1] To this end, subsection (a)(2) of the relevant conduct guideline requires courts, in determining an offender's base offense level, to include "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

Subsection 1B1.3(a)(2) applies to all offenses, whether charged or uncharged, that ordinarily must be grouped together, pursuant to U.S.S.G. § 3D1.2(d), for purposes of calculating the applicable sentencing range. *Id.*, comment. (n. 2). Offenses must be grouped together, under section 3D1.2(d), whenever "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."[2] Galloway's offense, theft from interstate shipment, falls within

---

**1.** As authority for adopting a real offense system, Wilkins and Steer state only the following: "The House version of sentencing reform legislation generally provided for a strict, offense of conviction sentencing guideline system. Conversely, the Senate version, *while it did not expressly specify,* seemed to lean toward a real offense system." William W. Wilkins & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 501 (1990) (footnotes omitted) (emphasis added).

I have reviewed the authorities cited in the authors' footnotes. I agree that the House version incorporated, essentially, a charged offense philosophy. Among other things, the House version required the court to "adhere as closely as possible to the principle that similar offenders convicted of similar offenses committed under similar circumstances should receive similar sentences." H.R.Rep. No. 1017, 98th Cong., 2d Sess. 2 (1984) (referring to proposed 18

U.S.C. § 3521(a)(2)). I cannot agree, however, that the Senate version, which Congress later enacted, adopted a real offense system to the extent the authors assert. *See,* Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 212(a), 217(a), 98 Stat. 1837, 1987–92, 2017–27 (codified as amended at 18 U.S.C. §§ 3551–3559 (1988)); 28 U.S.C. §§ 991–998 (1988). As I later discuss, these provisions do not authorize the Commission to promulgate guidelines for the purpose of punishing separate instances of factually distinct *unconvicted* criminal conduct.

**2.** Section 3D1.2(d), as written, applies to "multiple counts" of criminal conduct. The commentary to section 1B1.3(a)(2) makes clear that, for the purposes of the relevant conduct guideline, the grouping provisions of section 3D1.2(d) apply regardless of whether the offenses at issue were actually charged as multiple counts. U.S.S.G. § 1B1.3(a)(2), comment. (n.2 & backg'd.).

this grouping requirement. *See* U.S.S.G. § 3D1.2(d) (incorporating by reference U.S.S.G. § 2B1.1).

My review focuses on whether the Commission exceeded its statutory authority, or acted arbitrarily, in drafting U.S.S.G. § 1B1.3(a)(2) to include uncharged property crimes like Galloway's. *See Fidelity Fed. Savs. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 154, 102 S.Ct. 3014, 3023, 73 L.Ed.2d 664 (1982). At oral argument before the panel, we inquired where the Sentencing Commission derived the authority to promulgate the uncharged conduct provisions of section 1B1.3(a)(2). The government could not cite us to any specific statutory provision in the enabling act or elsewhere. We also asked the government to explain the Commission's rationale for incorporating the grouping provisions of section 3D1.2(d) into the relevant conduct guideline. On this issue, we received an equally unsatisfactory response from the government.

After a thorough search of the pertinent statutes and legislative history, I now conclude that the Sentencing Commission exceeded the scope of its statutory authority in promulgating the uncharged conduct provisions of section 1B1.3(a)(2) under the facts of this case. *United States v. Davern*, 970 F.2d 1490, 1495–98 (6th Cir.1992) (en banc) (Merritt, C.J., dissenting) (Congress did not authorize relevant conduct provisions adopted by Sentencing Commission). I make clear that my position in no way infringes on the traditional authority of sentencing courts to consider unconvicted criminal conduct for an applicable sentence within the guideline range. *See infra* pp. 435–36.

### 1. Scope of Authority

The Commission's authority to issue sentencing guidelines derives from 28 U.S.C.

§ 994 (1988). Subsection 994(a) directs the Commission to promulgate and distribute "guidelines, *as described in this section*, for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1) (emphasis added). The remainder of section 994 lays out a general floor plan for guideline promulgation, including several explicit specifications. 28 U.S.C. § 994(b)–(x). The Commission has no discretion to ignore these statutory directives. *See* S.Rep. No. 225, 98th Cong., 2d Sess. at 163 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3346 ("[t]he sentencing guidelines ... must be consistent with all pertinent provisions of titles 18 and 28"). Nonetheless, in at least two instances, the Commission failed to follow express and implied legislative directives.

### 2. Incremental Punishment

In section 994(*l*), Congress provides specific instructions about how the Commission should punish multiple instances of criminal misconduct. Incremental punishment is authorized "in a case where a defendant *is convicted of*" multiple criminal offenses.[3] 28 U.S.C. § 994(*l*)(1) (emphasis added). The clear implication is that Congress did not intend the guidelines to punish separate instances of unconvicted conduct incrementally. *See U.S. v. Davern*, 937 F.2d 1041, 1051 (6th Cir.1991); *see also United States v. Miller*, 910 F.2d 1321, 1329–30 (6th Cir.1990) (Merritt, C.J., dissenting) ("[t]he provision of the guideline enabling legislation authorizing 'incremental' penalties plainly requires conviction of the offense for which the sentence is imposed"), *cert. denied*, —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Any other interpretation renders the words chosen by Congress meaningless. Had Congress wanted separate unconvicted offenses to be punished incrementally, it could have done so simply by replacing the

---

**3.** Subsection 994(*l*)(1) provides, in relevant part:

(*l*) The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect—

(1) the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant *is convicted of*—

(A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and

(B) multiple offenses committed at different times....

28 U.S.C. § 994(*l*) (emphasis added).

phrase "is convicted of" with the word "commits."

The Senate Report explaining subsection 994($l$) confirms that Congress intended the incremental punishment provisions to apply only to valid criminal convictions. It states:

> Subsection ($l$) directs the Commission to promulgate guidelines that reflect the appropriateness of imposing an incremental penalty for each offense if a defendant is convicted of a number of offenses that are part of the same course of conduct, and if a defendant is convicted of multiple offenses committed at different times.... If no such incremental penalty were provided (e.g., were all sentences to be imposed without regard to the commission of other offenses and made to run concurrently), an offender who commits one offense would be faced with no deterrent to the commission of another during the interval before he is called to account for the first. It is the Committee's intent that, to the extent feasible, the sentences for each of the multiple offenses be determined separately and the degree to which they should overlap be specified. *Under this approach, if the conviction for one of the offenses is overturned, it will be unnecessary to recalculate the sentence.*

S.Rep. No. 225, 98th Cong., 2d Sess. at 176–77 (1983), *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3359–60 (emphasis added).

The Senate Report unequivocally requires any overturned convictions to be excluded from the sentencing calculation. This requirement necessarily applies to convictions overturned on legal technicalities, as well as convictions overturned due to the government's failure to prove guilt beyond a reasonable doubt. The clear implication is that Congress intended to afford defendants the full panoply of constitutional, statutory and procedural protections before subjecting them to incremental punishment for multiple offenses.[4]

The relevant conduct guideline promulgated by the Commission, however, fails to comport with these directives. To the contrary, the relevant conduct guideline *requires* offenders' sentences to be increased incrementally for a broad range of unconvicted conduct. It provides that an offender's base offense level *"shall* be determined" based on such unconvicted offenses. U.S.S.G. § 1B1.3(a) (emphasis added). This provision applies even where, as here, the conduct consisted of factually and temporally distinct crimes against property. I do not think a guideline of this scope can be supported in view of the express and implied legislative directives addressing the imposition of incremental punishment for criminal offenses.[5]

**4.** The excerpt from the Senate Report may call into question the interpretation, now widely accepted, that the guidelines may properly permit incremental sentence enhancement for acquitted conduct due to the lessened burden of proof at the sentencing hearing. *E.g., United States v. Averi,* 922 F.2d 765, 765–66 (11th Cir.1991) (per curiam); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–82 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Dawn,* 897 F.2d 1444, 1449–50 (8th Cir.) (dictum), *cert. denied,* —— U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir. 1989); *United States v. Isom,* 886 F.2d 736, 738–39 & n. 3 (4th Cir.1989). *But see United States v. Brady,* 928 F.2d 844, 850–52 (9th Cir.1991) (acquitted conduct may not be used to enhance guidelines sentence); *United States v. Juarez–Ortega,* 866 F.2d 747, 749 (5th Cir.1989) (per curiam) ("sentencing court was not relying on facts disclosed at trial to punish the defendant for the extraneous offense, but to justify the

heavier penalties for the offenses for which he was convicted").

**5.** In titles 18 and 28, Congress sometimes uses the word "offense" without including other qualifying language. Viewed in context, however, I think this term must be interpreted as a reference to convicted criminal conduct.

For example, in accordance with titles 18 and 28, the Commission is required to assure that its guidelines reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A) (incorporated by reference into 28 U.S.C. §§ 991(b)(1) and 994(f)). Significantly, 18 U.S.C. § 3553 does not come into play unless a defendant *"has been found guilty* of an offense." *See* 18 U.S.C. § 3551 (emphasis added). Moreover, the Senate Report strongly suggests that the term "offense," as used in this subsection, refers to convicted criminal conduct. S.Rep. No. 225, 98th Cong., 2d Sess. at 76,

### 3. Sentencing Disparity

28 U.S.C. § 994(f) directs the Commission, in promulgating guidelines, to pay "particular attention to the requirements of [28 U.S.C. §] 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities."[6] This latter subsection, 28 U.S.C. § 991(b)(1)(B), requires the Commission to establish policies and practices that avoid "unwarranted sentencing disparities among defendants with similar records *who have been found guilty of similar criminal conduct.*" *Id. See also* S.Rep. No. 225, 98th Cong., 2d Sess. at 161, *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3344. The plain language of this subsection indicates that Congress sought, in large part, to equalize sentences based on *convicted* criminal conduct.

The legislative history confirms this interpretation. According to the Senate Report, 28 U.S.C. § 991(b)(1)(B) underscores the major premise of the sentencing guidelines: the need to avoid unwarranted sentencing disparity. S.Rep. No. 225, 98th Cong., 2d Sess. at 78, *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3261. Consistent with this objective, the subsection estab-

lishes two factors as "the principle determinants of whether two offenders' cases are so similar that a difference between their sentences should be considered a disparity that should be avoided unless it is warranted by other factors." *Id.* at 161, *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3344. Under the statute, these factors are: (1) the prior records of offenders; and (2) the criminal conduct for which they are to be sentenced. *See id.*[7]

The relevant conduct guideline promulgated by the Commission strays far from this goal. The guideline requires increased penalties for unconvicted conduct no matter how minor the offense of conviction may be in proportion to the unconvicted offenses at issue. This requirement has caused considerable and widespread concern in both sentencing and reviewing courts. Indeed, since its promulgation, courts have repeatedly struggled with the tendency of the relevant conduct provisions to dwarf the actual count of conviction. *See, e.g., United States v. Townley,* 929 F.2d 365, 369 (8th Cir.1991) (uncharged conduct produced seven-fold increase in sentencing range); *United States v. Ebbole,*

---

*reprinted in* 1984 U.S.C.C.A.N. at 3182, 3259 ("the sentence should not ... differ substantially from the sentence given to another similarly situated defendant *convicted* of a similar offense under similar circumstances") (emphasis added). Notably, this portion of the Senate Report cross-references 28 U.S.C. § 991(b)(1)(B), which, as we observe *infra* p. 35, focuses on conduct of which a defendant "has been found guilty." S.Rep. No. 225, 98th Cong., 2d Sess. at 76 n. 163, *reprinted in* 1984 U.S.C.C.A.N. at 3259 n. 163.

Another example is provided in 28 U.S.C. § 994(c). In that subsection, Congress directs the Commission to determine the relevance of various factors in establishing categories of offenses for the sentencing guidelines. *Id.* at § 994(c)(1). Congress lists, as the first factor, "the grade of the offense." Since only charged or convicted offenses are typically graded, this provision suggests that Congress intended the word "offense" to denote the offense of conviction.

**6.** Section 991(b)(1)(B) provides:

(b) The purposes of the United States Sentencing Commission are to—

(1) establish sentencing policies and practices for the Federal criminal justice system that—

. . . .

(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records *who have been found guilty of similar criminal conduct* while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices[.]

28 U.S.C. § 991(b)(1)(B) (emphasis added).

**7.** To be sure, Congress did not intend these two factors to "eliminate justifiable differences between the sentences of persons convicted of similar offenses who have similar records." S.Rep. No. 225, 98th Cong., 2d Sess. at 161, *reprinted in* 1984 U.S.C.C.A.N. at 3182, 3344. Indeed, Congress required the Commission to consider a variety of additional factors and to determine what impact, if any, "would be warranted by differences among defendants with respect to those factors." *Id.* However, Congress nowhere enumerates unconvicted criminal conduct as one of these factors. *See generally* 28 U.S.C. §§ 991, 994; 18 U.S.C. § 3553.

917 F.2d 1495, 1496 (7th Cir.1990) (uncharged conduct resulted in tripling of sentence); *Miller,* 910 F.2d at 1329 (Merritt, C.J., dissenting) (same); *United States v. Brittman,* 687 F.Supp. 1329, 1335 (E.D.Ark.1988) (uncharged conduct quadrupled sentencing range), *rev'd in part,* 872 F.2d 827 (8th Cir.1989); *see also United States v. Sleet,* 893 F.2d 947, 948 (8th Cir. 1990) (uncharged conduct increased sentence); *United States v. Cohoon,* 886 F.2d 1036, 1037 (8th Cir.1989) (per curiam) (uncharged conduct essentially doubled sentence). As the numerous examples indicate, these compounded sentences are not occasional aberrations, but predictable consequences of the relevant conduct provisions now in effect. As such, these provisions violate Congress' explicit instruction that the Commission, as its *primary* task, seek to equalize sentences between defendants *found guilty* of similar conduct.

Given the statutory provisions and legislative history, I conclude that the Commission clearly exceeded its authority under the enabling legislation in drafting subsection 1B1.3(a)(2) of the relevant conduct guideline to encompass the unconvicted criminal conduct at issue in this case. I would hold the provision unenforceable insofar as it permits offenders to be systematically penalized for factually and temporally distinct property crimes that have neither been charged by indictment nor proven at trial.[8]

The sentencing transcript makes clear that the district court recognized the sentencing disparity that strict adherence to section 1B1.3(a)(2) would create with respect to two offenders indicted and convicted of identical offenses. The transcript also makes clear that the district court recognized the uncharged crimes in question as separate and factually distinct instances of criminal conduct. Accordingly, I

think the circumstances of this case provide the district court with justification for acting to eliminate this guideline-imposed disparity.

### B.

Assuming, for the sake of discussion, that the legislative mandate is not as clear as I find it and is susceptible to alternative constructions, the Commission, and the majority in turn, apply erroneous rules of interpretation and review.

The Commission believes that it has authority to adopt either a "charged offense" or what it terms a "real offense" methodology. Within this analysis, it reached its so called "compromise" on the broader, real offense, approach. *See* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1 (1988) (hereinafter Breyer).

The guideline, section 1B1.3(a)(2), with its reference to section 3D1.2(d), permits, as the facts of this case show, consideration of separate, uncharged crimes that are difficult to envision as part of even a "real offense" analysis, as more properly typified by the terms of section 1B1.3(a)(1), and as discussed by Judge Breyer. Breyer, *supra,* at 8–13. It permits, as earlier stated, inclusion and consideration of unindicted, unproven (by proof beyond a reasonable doubt) and temporally unrelated criminal acts.

That is not, however, the main problem. We must ask, assuming the legislative language, whether the Commission followed an allowable course. I submit that it did not.

The majority seems to argue, faintly, the premise that the statute is unambiguous in requiring real offense sentencing. It ap-

---

**8.** I observe language to the contrary in *United States v. Ebbole,* 917 F.2d 1495, 1501 (7th Cir. 1990), and support for our decision in *United States v. Miller,* 910 F.2d 1321, 1329–30 (6th Cir.1990) (Merritt, C.J., dissenting), *cert. denied,* — U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). In those drug trafficking cases, quantity does not comprise an element of the crime.

In the present case involving a crime under 18 U.S.C. § 659, quantity *does* constitute an element of the crime. At least with regard to uncharged separate property crimes, which the government asserts is a basis for the heavier sentence, I am in agreement with the rationale offered by Chief Judge Merritt in *Miller,* rather than the dictum on this question by the Seventh Circuit in *Ebbole.*

parently divines direct language in the statute showing clear Congressional intent that the Commission should fashion guidelines based on relevant conduct. Majority Opinion *supra* p. 420. Support for this conclusion supposedly springs from 28 U.S.C. § 994(c)(2).[9] The Commission obviously does not find such clear direction in the statute. It has, as indicated, frequently termed the guideline a compromise and has at least intimated that an offense of conviction guideline would have been equally permissible under the law. *See, e.g.,* Wilkins & Steer, *supra,* at 500–01 and Breyer, *supra,* at 8. As I pointed out earlier, the statute is clearly directed toward offense of conviction conduct, and at best, the legislation is ambiguous on this point. The majority, in fact, takes a more realistic view when it states "[i]f it [the statute] is not so clear, we have no doubt that, taken with the more general language [in the statutes] there is sufficient and permissible statutory underpinning [for the guideline]." Majority Opinion *supra* p. 421. This appears a concession by the majority that we are dealing with, at least, an ambiguous message from Congress.

The majority cites, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) for the proposition that we should defer to the Commission's interpretation of its legislative authority. "[I]f the statute is silent or ambiguous" with respect to this authority, says the majority, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Majority Opinion *supra* p. 420 (*quoting Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2782). Reliance on *Chevron* is misplaced for two reasons.

First, the majority opinion, as do earlier opinions of this court, applies *Chevron* and gives deference to the statutory interpretations made by the Sentencing Commission,

presumably likening the guidelines to rules promulgated by an executive agency. *See United States v. Lee,* 887 F.2d 888, 890 (8th Cir.1989). This is a misapplication of *Chevron.*

In *Chevron,* the Supreme Court recognized the political compromise involved when Congress enacts broad legislation and allows the executive branch to set specific policy through promulgation of regulations. *Chevron,* 467 U.S. at 865, 104 S.Ct. at 2793; *United States v. Shimer,* 367 U.S. 374, 382–83, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). It also recognized the unique expertise agencies have in the particular areas they regulate. *Chevron,* 467 U.S. at 865, 104 S.Ct. at 2793.

The Sentencing Commission "is established as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). Since three of the seven members of the Commission are federal judges, *see* 28 U.S.C. § 991(a), and the Commission promulgates guidelines in an area that is historically within the discretion of judges, it is mere conjecture to assume the Commission has any expertise not found in the members of the judiciary who review its actions. Additionally, the separation of powers concern which militates in favor of deference to the compromise between Congress and the executive in the usual regulatory regime is attenuated when, as here, the body responsible for promulgating the regulations is also within the same branch of government. Accordingly, adherence to *Chevron* is unnecessary and improper in dealing with statutory interpretations made by the Sentencing Commission. I would disregard the views of the Commission and conduct a de novo review.

Second, and most importantly, we are dealing with punishment for a crime and not with a civil matter as in *Chevron.* Thus, the rule of interpretation found in *United States v. Thompson/Center Arms*

---

9. The majority appears inconsistent on this point when it also states "section 994(c)(2) gives the Commission full authority to adopt a relevant conduct guideline, although *it certainly cannot* be said *that the Commission was required to do so.*" Majority Opinion *supra* p. 420

(emphasis added). Perhaps the majority simply means that it is clear that the statute permits the Commission to follow one course or the other. Given the legislative language and legislative history I have set forth in Part A, this is a difficult argument for the majority to support.

*Co.,* —— U.S. ——, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992), not *Chevron,* should more appropriately be applied.

In *Thompson/Center Arms Co.,* the issue was whether an unassembled complete parts kit for a short-barreled rifle is a short-barreled rifle for the purposes of the National Firearms Act (NFA). *Id.* —— U.S. at ——, 112 S.Ct. at 2105. The Supreme Court, applying the "ordinary rules of statutory construction" was "left with an ambiguous statute." *Id.* —— U.S. at ——, 112 S.Ct. at 2109. Even though the immediate question was collection of a tax, a civil matter, the Court applied the rule of lenity noting that the NFA has criminal applications. *Id.* The rule of lenity, of course, requires an interpretation favorable to a criminal defendant. Here, we do not have a mere civil statute with criminal applications, we are directly presented with a statute dealing with punishment for a crime. Surely application of the rule of lenity should be required in interpreting whether or not the Commission exceeded the scope of its statutory authority. *See also Hughey v. United States,* 495 U.S. 411, 422, 110 S.Ct. 1979, 1985, 109 L.Ed.2d 408 (1990) (applying principles of lenity to limit assessment of restitution under Witness Protection Act to amount involved only in offense of conviction as opposed to amount involved in other relevant conduct).

### C.

Finally, I take exception to two additional arguments advanced by the majority. First, the majority incorrectly states that use of relevant conduct is historically supportable, and is "nothing more than tak[ing] traditional sentencing factors and accord[ing] them a 'predetermined effect.' " Majority Opinion *supra* p. 423 (quoting *United States v. Restrepo,* 946 F.2d 654, 657 (9th Cir.1991)). I find no historical precedent, and the majority points to none, for the use of relevant conduct in this way. Conduct outside of the scope of an offense of conviction has never before been used to set the coordinates within which the judge must work in crafting a sentence. Historically, such information has been used exclusively to pinpoint the precise sentence to be imposed within authorized sentencing latitudes.

Second, the majority argues that various amendments to "relevant conduct" rules have been sent to the Congress without rejection of section 1B1.3. Majority Opinion *supra* p. 421. This presumably supports the idea that the Commission was correct in finding authority to adopt its relevant conduct guidelines. Such authority, however, must be found within the applicable statutory language. Statutes are not considered, passed, amended, revoked or interpreted by the inaction of Congress. Further, it is not for the Congress to interpret a duly enacted law, it is, as in this instance, a matter for the court.

### D.

Having concluded that the Commission exceeded its authority, I add a necessary caveat. Nothing in my position is intended to infringe on the district court's traditional sentencing authority to consider unconvicted conduct.[10] The appropriate place for such consideration, however, is under U.S.S.G. § 1B1.4. This guideline permits courts to consider potentially relevant information in determining the sentence to impose *within the specified guidelines range.*

Section 1B1.4 essentially codifies the rule, under the pre-guidelines system, that permitted district courts to consider information about a defendant's background, character and conduct almost without limitation. *See United States v. Grayson,* 438 U.S. 41, 45–50, 98 S.Ct. 2610, 2613–15, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 246–47, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). As a practical matter, under the prior system, the court's discretion to consider uncharged criminal conduct fell at the outer parameters of its sentencing authority. It was a potentially

---

**10.** It could be argued, though, that the relevant conduct guideline promulgated by the Commission infringes upon this traditional authority by mandating increased punishment for such conduct.

troublesome power, but was justified by the prior system's need to insure that the court obtained the most complete picture possible before exercising its sentencing discretion. *See Grayson,* 438 U.S. at 53–54, 98 S.Ct. at 2617; *see also Ebbole,* 917 F.2d at 1496 (recognizing unfairness of sentencing a defendant on the basis of unconvicted conduct). Significantly, however, even under the prior system of discretionary sentencing, courts could not use their power to consider uncharged conduct to achieve "the impermissible sentencing practice of incarcerating for the purpose of saving the Government the burden of bringing a separate and subsequent ... prosecution." *Grayson,* 438 U.S. at 53, 98 S.Ct. at 2617.

### E.

This opinion is consistent with the prior unanimous panel opinion reported as *United States v. Galloway,* 943 F.2d 897 (8th Cir.1991), and I approve of the views expressed therein.

Accordingly, without dealing with the constitutional issues decided by the district court and discussed in Judge Bright's dissent, I would affirm the sentence imposed by Judge Eisele. I conclude that, as applied in this particular case, the United States Sentencing Commission exceeded its authority in promulgating the uncharged conduct provisions of U.S.S.G. § 1B1.3(a)(2) to encompass separate and factually distinct criminal property offenses.

BRIGHT, Senior Circuit Judge, with whom RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and McMILLIAN, Circuit Judge, join, dissenting.

Over two hundred years ago, this country adopted the first ten amendments to the Constitution. The fifth and sixth amendments state:

AMENDMENT V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ..., nor be deprived of ... liberty ... without due process of law....

AMENDMENT VI

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Today, in this case, the Government prosecutor, under the aegis of the Sentencing Commission Guidelines, asserted the following propositions to the sentencing judge and urges them upon this court:

1. That Galloway should be sentenced for seven additional separate and independent thefts of property from interstate shipments even though (a) no grand jury ever indicted Galloway for those crimes; (b) the Government never tried Galloway for those offenses; (c) no jury ever found Galloway guilty of those offenses.

2. Further, notwithstanding absence of notice of those charges (including indictment), trial and conviction, the Government can and will punish Galloway for these uncharged crimes without proving Galloway guilty of any of them by proof "beyond a reasonable doubt," but rather by a preponderance of the evidence.

The district judge for the Eastern District of Arkansas, Garnett Thomas Eisele, now a senior judge with a fine reputation as a distinguished and experienced jurist, cited the express words of the fifth and sixth amendments in rejecting as unconstitutional the Government's contentions.

Judge Eisele in part stated in his conclusion:

I am going to conclude as a matter of law that in this case the Government may not, in the posture of this record, enhance the sentence of the defendant by proving by a preponderance of the evidence the conduct and acts referred to in paragraphs 13 through 19 [uncharged

crimes in presentence report] because I feel it would violate the defendant's constitutional rights. What we have here is what I have referred to as the Russianizing of our Constitution. The language is quite clear, but we can, by sophistry or otherwise treat it and ignore it and that's what happened in other countries. I don't want to see it happen here.

*United States v. Galloway,* 943 F.2d 897, 899 (8th Cir.1991), *vacated,* order of Nov. 20, 1991 (quoting Sent. Tr. at 28–29).

We dissenters applaud Judge Eisele's courage and integrity in advising the Government prosecutor in strong, clear language that his proposed action violates the Constitution.

The unanimous panel in this case ruled that the relevant conduct guideline, U.S.S.G. § 1B1.3, as applied to Galloway's conduct here in question (section 1B1.3(a)(2)), exceeded the authority Congress granted to the Sentencing Commission. *United States v. Galloway,* 943 F.2d 897 (8th Cir.1991), *vacated,* order of Nov. 20, 1991. This en banc court's rejection of the non-constitutional ground for affirming the district court now requires that we address the constitutional questions in this dissent.

We conclude that section 1B1.3(a)(2) flagrantly violates the Constitution. This regulation punishes persons for alleged crimes that have not been the subject of notice, indictment or trial. If the former Soviet Union or a third world country had permitted such a practice, human rights observers would condemn those countries.[1]

As we demonstrate in the discussion below, the majority mistakenly relies on case law that pertains generally to indeterminate sentencing (where the judge considers all factors about the offender in setting a sentence within statutory authority and where the parole commission takes a second look at the sentencing by setting a parole eligibility date). To apply that precedent to the mechanistic sentencing under the guidelines (probation officers plug into a computer the data prescribed by the commission and out pops the flat time, no parole sentence which the judge must impose) defies logic and is just plain wrong and unfair.

## I.

### A. Background

Eddie Lee Galloway pled guilty to one count of interstate theft. Galloway admitted to stealing goods worth $37,000 on March 22, 1990. If the Guidelines only considered the offense of conviction in determining Galloway's sentence, then the range for his sentence would be twenty-one to twenty-seven months. The district court actually sentenced Galloway to twenty-four months. However, interstate theft is an offense that can be grouped with similar offenses in determining a sentence under section 3D1.2. When an offense can be grouped with similar offenses, then the relevant conduct to be examined in determining an offender's base offense level under section 1B1.3(a)(2) is "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."[2] The presentence report [PSR] alleges that Galloway committed seven other interstate thefts between December 1988 and March 1990 and stole goods worth a total of $1,009,950, based on interviews with FBI agents. If the sentencing judge, on remand, finds by a preponderance of the evidence that these separate crimes occurred, and that Galloway played a "leadership

---

1. When people from other developed countries are informed that our country uses a modified "real offense" system, they cannot believe it. Michael Tonry, *Salvaging the Sentencing Guidelines in Seven Easy Steps,* 4 Fed.Sent.Rep. 355, 356 (1992) [hereinafter Tonry, *Salvaging* ]. It is no accident that none of the states with sentencing commissions (Minnesota, Oregon, Pennsylvania and Washington) have chosen to penalize defendants for uncharged or unconvicted conduct. *Id.* at 357; *see also* Dale G. Parent, *Struc-turing Criminal Sentences: The Evolution of the Minnesota Sentencing Guidelines* 63 ("The [Minnesota] Commission believed that it would be fundamentally unfair to base a presumptive sentence on an offense for which the defendant had not been charged or convicted.").

2. The seven offenses seem to fall under the acts or omissions that were part of the same course of conduct.

role" in the offenses, then Galloway faces a sentencing range of sixty-three to seventy-two months. That sentencing range would be the same, whether Galloway had pled guilty to one or eight counts of theft.

Only in the world of Alice in Wonderland, in which up is down and down is up, and words lose their real meaning, does such a sentence comply with the Constitution. Galloway must receive the benefit of the following procedures before he can be punished for the alleged crimes that occurred separately from his offense of conviction:

### 1. Fair Notice

Galloway never received notice that he would be punished for the seven uncharged thefts alleged in the PSR until after he pled guilty. The fifth amendment requires that a defendant receive fair notice by "presentment or indictment." The sixth amendment also requires a defendant to be informed of the "nature and cause of the accusation." *See also Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). "This repetition of the right indicates the significance that the Founders attached to the right to receive fair notice of the crime that a defendant must defend against." *United States v. Miller,* 910 F.2d 1321, 1331 (6th Cir.1990) (Merritt, C.J., dissenting), *cert. denied,* — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). The Guidelines have created a system where a defendant is not informed of the changing nature of the charges against him until the probation office issues the PSR, which occurs after the trial or guilty plea. Galloway, as a defendant, pleaded guilty to one count of interstate theft. Little did he realize the trap the Guidelines had set for him.

### 2. Jury Trial

The sixth amendment provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy jury trial. The Supreme Court has held that the sixth amendment mandates a jury trial in all cases where a defendant faces a penalty of more than six months in prison. *Baldwin v. New York,* 399 U.S. 66, 72–74, 90 S.Ct. 1886, 1890–91, 26 L.Ed.2d 437 (1970). In jury trials, the Federal Rules of Evidence apply, and the court must exclude all hearsay statements that do not fit under a firmly rooted exception to the hearsay rule to comply with the Confrontation Clause. *See White v. Illinois,* — U.S. —, —, 112 S.Ct. 736, 741–42, 116 L.Ed.2d 848 (1992). The Government in this case proposes to prosecute Galloway at the sentencing hearing for committing seven crimes in addition to the one to which he pled guilty using testimony which may contain little more than rumor, gossip and what the lawyers recognize as hearsay—evidence courts have always considered unreliable. The Government seeks not to penalize by proof of guilt beyond a reasonable doubt, but rather by proof by a mere preponderance of the evidence that the crimes occurred. By such chimerical proof, the Government seeks to add an additional three years of imprisonment to Galloway's sentence. The Constitution, however, requires that the Government prosecute Galloway for those crimes in front of a jury under usual rules of evidence.

Under the Guidelines none of the above guarantees apply to the sentencing phase of a trial. The Guidelines system thus degrades the role of the jury by "invit[ing] the prosecutor to indict for less serious offenses which are easy to prove and then expand[ing] them in the probation office." *Miller,* 910 F.2d at 1332 (Merritt, C.J., dissenting); *see also* Michael H. Tonry, *Real Offense Sentencing: The Model Sentencing and Corrections Act,* 72 J.Crim.L. & Criminology 1550, 1579 (1981) [hereinafter Tonry, *Real Offense* ] (arguing that a real offense system "undermine[s] and trivialize[s] the law of evidence, the burden of proof, and the substantive law"). We now examine the rationale supporting the guideline increase in Galloway's sentence which the Government seeks here stemming from the seven additional crimes the Government claims Galloway committed.

### II.

#### A. Discussion of prior case law

What line of reasoning has led courts to conclude that the "real offense" system

used by the Guidelines does not violate the basic procedural protections that our Constitution mandates? The majority, and every other court which has upheld the use of uncharged conduct against a constitutional challenge, has relied upon two Supreme Court cases as warranting such decision-making: *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1946) and *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *See, e.g., ante,* at 422–23; *United States v. Mobley,* 956 F.2d 450, 455–57 (3d Cir.1992); *United States v. Restrepo,* 946 F.2d 654, 656–60 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); *United States v. Martinez,* 924 F.2d 209, 211 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991); *United States v. Ebbole,* 917 F.2d 1495, 1498–99 (7th Cir.1990); *United States v. Guerra,* 888 F.2d 247, 249–50 (2d Cir. 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990); *United States v. Wright,* 873 F.2d 437, 441–42 (1st Cir.1989). *Williams* and *McMillan* upheld the practices of a different and now changed sentencing system, and have become inapplicable precedents as a result.

### 1. *Williams*

The majority uses *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949), as support for the proposition that "[h]istorically, courts have been allowed to consider uncharged criminal conduct in determining the sentence a convicted defendant should receive within the maximum penalty permitted by law," *ante,* at 419. The Court in *Williams* permitted a judge to consider uncharged

conduct alleged in a presentence report at the sentencing phase of a murder trial. Under the New York system, and the former federal system, a sentencing judge could give a defendant any sentence within the statutory range for a crime. Sentencing judges could consider all aspects of a defendant's background,[3] as well as uncharged conduct, and *could give that conduct any weight they chose in assessing a sentence. See United States v. Grayson,* 438 U.S. 41, 55, 98 S.Ct. 2610, 2618, 57 L.Ed.2d 582 (1978). Unless the judge overtly stated that a sentence was based on unconstitutional reasons, a defendant had no opportunity to challenge a sentence, and no liberty interest in a particular sentence within the sentencing range. *See, e.g., United States v. Tucker,* 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Because judges in the prior system traditionally considered all types of evidence at sentencing that they deemed relevant, the Court in *Williams* permitted judges to also consider uncharged conduct in determining an offender's sentence.

Congress rejected that tradition wholecloth by enacting the Sentencing Reform Act. The Sentencing Guidelines leave little room for discretion by the judge at sentencing. After the judge has made certain required factual findings about the offense, and the offender's criminal history, the Guidelines *mandate* a narrow sentencing range. *See Burns v. United States,* — U.S. ——, ——, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991). A finding of relevant uncharged conduct *automatically* raises the guideline sentence that a defendant faces.[4]

**3.** In the pre-Guidelines era, rehabilitation was a major goal of sentencing. Judges considered a wide range of offender characteristics, such as age and vocational skills in determining a sentence. *Williams,* 337 U.S. at 248–49, 69 S.Ct. at 1083–84. The Guidelines have largely ignored rehabilitation as a goal of imprisonment, notwithstanding Congress' instructions to judges in 18 U.S.C. § 3553(a). ("The court, in determining the particular sentence to be imposed, shall consider ... the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ...."). *See* U.S.S.G. § 5H. More-

over, the sentences in the old system were indeterminate and could be revised by the parole commission. *Williams,* 337 U.S. at 248, 69 S.Ct. at 1083–84. Congress has abolished parole in favor of real-time sentencing. 18 U.S.C. § 3624(b) (1988). *See generally* Gerald W. Heaney, *The Reality of Guideline Sentencing: No End to Disparity,* 28 Am.Crim.L.Rev. 161, 215–16 (discussing differences between indeterminate and Guidelines system).

**4.** This writer and others have argued in the past that the Sentencing Reform Act vests sentencing judges with considerable discretion in determin-

The Guidelines largely prevent judges from considering an offender's individual characteristics in handing down a sentence, except to the extent that the sentence falls within the guideline range.[5] Finally, a defendant has a right to appeal the findings of fact used to determine his sentence. The Guidelines represent a complete rejection of judicial discretion at sentencing except in certain limited circumstances that are not present here. As a result, *Williams v. New York*, and other cases by the Court that condoned loose standards of factfinding in prior indeterminate sentencing systems, have little relevance as precedent in analyzing the Guidelines' constitutionality. *United States v. Clark*, 792 F.Supp. 637, 645–49 (E.D.Ark.1992); Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1712–13 (1992); Heaney, *supra* note 3, at 220; Tonry, *Salvaging, supra* note 1, at 357. Reliance on *Williams* is misplaced. Rather, the Latin maxim applies here; *cessante ratione legis, cessat et ipsa lex* (The reason of the law ceasing, the law itself also ceases).

### 2. *McMillan*

In *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court upheld against a due process challenge a provision of a Pennsylvania sentencing statute which mandated a minimum five year sentence for a felon who visibly possessed a firearm during certain felonies. The majority claims that the Guidelines "do not differ from the Pennsylvania statute in any manner material to a constitutional inquiry." *Ante*, at 423. I disagree. Crucial differences exist between the Guidelines and the Pennsylvania system condoned by the *McMillan* Court.

The Court in *McMillan* explicated federalism concerns and the need to minimize federal interference with state criminal systems. The Court stated that its decision was controlled by *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and quoted the following passage from that case:

> "It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California*, 347 U.S. 128, 134, 74 S.Ct. 381, 384, 98 L.Ed. 561 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States."

*McMillan*, 477 U.S. at 85, 106 S.Ct. at 2415–16 (quoting *Patterson*, 432 U.S. at 201–02, 97 S.Ct. at 2322).

When reviewing a state criminal system under the due process clause of the fourteenth amendment, a federal court needs to give states leeway to make choices about procedures. No such concern about federalism exists when reviewing the Guidelines.

---

ing an offender's sentencing range, and that the Sentencing Commission violated the Act by drafting Guidelines which deprive judges of that discretion. *See United States v. Edgar*, 971 F.2d 89, 96–99 (8th Cir.1992) (Heaney, J., concurring in part and dissenting in part); *United States v. Quarles*, 955 F.2d 498, 503–06 (8th Cir.) (Bright, J., concurring in part and dissenting in part), *cert. denied*, —— U.S. ——, 112 S.Ct. 2285, 119 L.Ed.2d 209 (1992); *United States v. Davern*, 937 F.2d 1041 (6th Cir.1991), *vacated and rev'd en banc, United States v. Davern*, 970 F.2d 1490, 1492–93 (6th Cir.1992) (en banc). Recently this court expressly approved of the Sentencing Commission's position. *United States v. Johnston*, 973 F.2d 611 (8th Cir.1992). It did so essentially ipse dixit, paradoxically citing no authority except concurring and dissenting opinions of this judge and Judge Heaney. *Id.* (citing *United States v. Edgar*, 971 F.2d 89, 96–99

(8th Cir.1992) (Heaney, J., concurring and dissenting); *United States v. Stockton*, 968 F.2d 715, 721–22 (8th Cir.1992) (Bright, J., concurring); *United States v. England*, 966 F.2d 403, (8th Cir.1992) (Bright, J., concurring)). Because the Guidelines, as they are written and are being enforced, operate as mandatory sentences, they violate the dictates of *McMillan*, as explained *infra*.

**5.** The Sentencing Commission's policy statements permit judges under special circumstances to consider an offender's personal characteristics. The policy statements say that personal characteristics are not *ordinarily* relevant, not that they are *never* relevant. U.S.S.G. § 5H. Unfortunately, the Courts of Appeals' frequently rigid application of the policy statements has precluded any meaningful consideration of an offender's personal characteristics.

Federal courts can police the Guidelines' constitutionality without infringing on states' ability to experiment with their own systems. *See* Susan N. Herman, *Procedural Due Process in Guideline Sentencing,* 4 Fed.Sent.Rep. 295, 297 (1992).

The reasoning of the *McMillan* Court supports the dissenters, and not the majority.

The *McMillan* Court found no violation of due process, in part, because the Pennsylvania statute "neither alter[ed] the maximum penalty for the crime committed nor create[d] a separate offense calling for a separate penalty; it operate[d] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it...." 477 U.S. at 87–88, 106 S.Ct. at 2417. The Pennsylvania statute only limited a judge's discretion in the minimum sentence imposed on an offender. The Court cited to its decision in *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), as an example of a sentencing system that violated due process by raising an offender's maximum penalty without procedural guarantees:

> Under the Colorado scheme at issue in *Specht,* conviction of a sexual offense otherwise carrying a maximum penalty of ten years exposed a defendant to an indefinite term to and including life imprisonment if the sentencing judge made a post-trial finding that the defendant posed "a threat of bodily harm to members of the public, or is an habitual offender and mentally ill," *id.,* at 607 [87 S.Ct. at 1211]. This finding could be made, without notice or any "hearing in the normal sense," based solely on a presentence psychiatric report. *Id.,* at 608 [87 S.Ct. at 1211]. This Court held that the Colorado scheme failed to satisfy the requirements of due process, and that the defendant had a right to be present with counsel, to be heard, to be confronted with and to cross-examine the witnesses against him, and to offer evidence of his own.

*McMillan,* 477 U.S. at 88–89, 106 S.Ct. at 2417.

The Guidelines present similar problems to the system in *Specht.* The Sentencing Reform Act states "[t]he court *shall* impose a sentence of the kind, and within the range, [set forth in the Guidelines] *unless* the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b) (1988) (emphasis added). The Guideline range operates as the effective statutory maximum and minimum sentence for an offender. Judges possess no discretion in calculating that range, and very limited discretion to depart from it. Indeed, usually non-judicial officers (probation officers) make the mechanical calculations. However, that range is determined based on findings made *at sentencing,* and not by the jury at a trial. Thus, *McMillan* is inapplicable. The sentence available to a district judge is the guideline range, and not the statutory minimum or maximum sentences.

In this case under the Guidelines, should the district court find that Galloway had committed seven other interstate thefts, the district court must raise the guideline range for Galloway's crime, and raise by more than two and one-half times the available maximum sentence from twenty-seven months to seventy-two months. This determination may be based solely on hearsay statements contained in a PSR, which may be unreliable. *See United States v. Lawrence,* 918 F.2d 68, 72–74 (8th Cir.1990) (Bright, J., dissenting), *cert. denied,* —— U.S. ——, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991). Only illusory differences exist between the Guidelines and the scheme condemned by the Court in *Specht;* both systems unconstitutionally permit increases in an offender's statutory maximum punishment for a crime without constitutional protections. *See McMillan,* 477 U.S. at 87–88, 106 S.Ct. at 2417; *United States v. Mobley,* 956 F.2d 450, 462 (3d Cir.1992) (Mansmann, J., dissenting); Richard Husseini, Comment, *The Federal Sentencing Guidelines: Adopting Clear and Convincing Evidence as the Burden of Proof,* 57 U.Chi.L.Rev. 1387, 1401 (1990).

Another crucial difference between this case and *McMillan* is that the Pennsylvania statute only mandated consideration of facts surrounding the "circumstances of a crime" at sentencing. 477 U.S. at 92, 106 S.Ct. at 2419. The Government seeks to apply the Guidelines, which mandate that judges consider crimes that occurred at different times and places from the offense of conviction. The *McMillan* Court held that because the Pennsylvania law assigned "one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given to that factor," it did not violate the requirement of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the elements of an offense be proven beyond a reasonable doubt, *id.* at 368, 90 S.Ct. at 1075. *McMillan*, 477 U.S. at 89, 106 S.Ct. at 2417.

We clearly recognize certain appropriate "sentencing factors." When a defendant is convicted of assault, the court considers the defendant's brutality and the victim's vulnerability in calculating a sentence. When a defendant is convicted of possessing drugs, the court determines the quantity of drugs the defendant possessed. These factors focus on the particular crime which has been established by the verdict of the jury. *Id.* at 86, 106 S.Ct. at 2416.

In Galloway's case, a proper consideration at sentencing would be the value of the goods stolen by him under the conviction. We do not quarrel with conduct attendant to the crime charged being used as a sentencing factor. The Government here, to the contrary, seeks to punish Galloway for his crime to which he pled guilty plus other separate alleged crimes where no conviction exists.[6] Congress has recognized that separate interstate thefts are distinct crimes by mandating criminal liability for "each case" of theft. 18 U.S.C. § 659 (1988). However, under the Guidelines, Galloway will be liable for an additional seven uncharged thefts, without suffering a conviction of any of them. By punishing Galloway for those crimes, the Guidelines violate *McMillan* by "creat[ing] ... separate offense[s] calling for [ ] separate penalt[ies]...." 477 U.S. at 88, 106 S.Ct. at 2417. As Sixth Circuit Chief Judge Merritt argued: "To hold that the Sentencing Commission may or has validly established a sentencing system for relevant conduct which treats as 'irrelevant' the difference between conviction and nonconviction flies in the face of the Constitution." *United States v. Davern*, 970 F.2d at 1512 (6th Cir.1992) (en banc) (Merritt, C.J., dissenting).

The plain language of the Constitution mandates that if the Government is to incarcerate someone for a period of time because of crimes he committed, the Government must give that person notice of the crimes he is being punished for, and must try that person before a jury, which must convict the person of committing the crimes. None of the precedents cited by the majority support rejecting those fundamental protections written into the Constitution of these United States.

## III.

### A. Due process, preponderance of the evidence

Even if we were to ignore the precise language of the Constitution, the Guide-

---

**6.** The majority uses as authority for its holding a passage from *McMillan* where the Court, quoting again from *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), rejected the "claim that whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *McMillan*, 477 U.S. at 84, 106 S.Ct. at 2415 (citing *Patterson*, 432 U.S. at 214, 97 S.Ct. at 2329). Keep in mind that the Court in *Patterson* rejected a claim by a defendant that a State had to prove beyond a reasonable doubt the absence of facts establishing an affirmative defense to a murder. The Court held that *Winship* required that a State prove the elements of an offense by guilt beyond a reasonable doubt, but did not require a State to disprove affirmative defenses to a crime. *Patterson*, 432 U.S. at 211, 97 S.Ct. at 2327. Nothing in either *McMillan* or *Patterson* relieves states and the Government of the burden of proving a defendant guilty beyond a reasonable doubt of committing separate, discrete acts of criminal conduct before they may punish a defendant for committing that conduct.

lines are unconstitutional because they deprive offenders of their liberty without due process. Under the Guidelines, a judge makes findings which will determine whether a defendant such as Galloway spends two years and three months or six years in prison. The Guidelines do not specify any standard of proof the courts should use in making sentencing findings for relevant but uncharged conduct. The majority reasons that those findings need only be made by a preponderance of the evidence. Numerous judges and scholars have criticized the use of the preponderance standard at sentencing as violating due process. *Restrepo*, 946 F.2d at 669–78 (Norris, J., dissenting); *Mobley*, 956 F.2d at 462 (Mansmann, J., dissenting); David N. Adair Jr., *House Built on a Weak Foundation—Sentencing Guidelines and the Preponderance Standard of Proof*, 4 Fed. Sent.Rep. 292, 292 (1992); Judy Clarke, *The Need for a Higher Burden of Proof for Factfinding Under the Guidelines*, 4 Fed. Sent.Rep. 300, 301 (1992); Husseini, *supra*, at 1401–02. Those criticisms apply with even greater force to findings at sentencing regarding uncharged conduct which is separate from the offense of conviction, as is the case here.

The majority has failed to consider the argument that a convicted defendant possesses a liberty interest in the precise range of sentence obtained by guideline methodology, which as noted rejects judicial discretion. When the sentence may be increased severalfold, as here, due process considerations suggest that something akin to clear and convincing evidence should apply.

The majority expresses some due process concerns by its apparent agreement with the Third, Seventh and Ninth Circuits "that due process may be violated if the punishment meted out following application of the sentencing factors overwhelms or is extremely disproportionate to the punishment that would otherwise be imposed." *Ante*, at 426. It cites cases where the uncharged conduct nevertheless constituted part of the offense of conviction and recognized that where the "tail wags the dog," a high-

er standard of proof may be required. *Ante*, at 426.

The issue of the degree of proof is not now before us. However, as this case is remanded by the majority, the district court may address that issue and weigh the scope of Galloway's liberty interest, the risk of error inherent in the preponderance of the evidence standard, and the Government's interest in a lower burden of proof. *See Burns v. United States*, — U.S. —, —, 111 S.Ct. 2182, 2193–94, 115 L.Ed.2d 123 (1991) (Souter, J., joined by White and O'Connor, JJ., dissenting). After performing this due process "calculus," the district court may find that it must require the Government to prove the separate crimes alleged against Galloway by clear and convincing evidence, or a higher standard of proof.

## IV. CONCLUSION

After almost a quarter century of serving as a federal appellate judge, this writer is somewhat astonished to be writing a dissent in this constitutional area of law, where the Constitution proscribes government abuses against persons with such precise language as "[n]o person shall be held to answer for a ... crime, unless on a presentment or indictment ... nor be deprived of ... liberty ... without due process of law" and "the accused shall enjoy the right to a speedy and public trial ..., and to be informed of the nature and cause of the accusation; [and shall] be confronted with the witnesses against him...." U.S. Const. amends. V, VI.

In this case, the prosecutor urged upon the district judge and urges upon us that inasmuch as Galloway pleaded guilty to one crime of interstate theft, the prosecutor should be able to show without previous notice, indictment or trial that Galloway had participated in seven other separate interstate thefts and thus, require the judge under the Guidelines to sentence Galloway for eight separate crimes rather than one.

In the face of express prohibition of the Constitution, the majority by a process of legal legerdemain converts the seven dis-

tinct crimes into "sentencing factors" and thus finesses out the crucial constitutional protections granted all persons.

The Guidelines' Alice in Wonderland approach to legal language is aptly illustrated in the majority's statement that "[a] theft that is but one of a chain of eight similar thefts is far different from a single theft in interstate commerce. This is 'a circumstance of [the] offense,' *McMillan*, 477 U.S. at 92, 106 S.Ct. at 2419, that bears directly upon its seriousness, and even though uncharged, may properly be considered in determining the length of that sentence within the statutory range." *Ante*, at 424.

The facts show that the additional alleged thefts, if committed, amounted to separate discrete (and uncharged) events. No conspiracy or connection among the separate charges surfaced or was alleged. The PSR concedes that these are separate discrete crimes of the same type. Nevertheless, the Sentencing Commission and the majority of this court make eight into one through artificial regulations stipulating that crimes of the same type will be considered as one crime.[7]

In this Guidelines Wonderland, one is eight and eight is one! I do not understand this new math; this sort of sleight of hand logic ought to be rejected outright. Hopefully the Supreme Court, as the ultimate guardian of freedom, will do so.

As a final comment to the constitutional section, this writer adds a bit of personal, judicial anecdotal history. Some twenty years earlier, while sitting by special assignment as a district judge in the District of Minnesota, this writer presided over a felony case. After trial and conviction, a government law enforcement agency for sentencing purposes delivered to me, ex parte, a large envelope containing allegations of other crimes of the defendant supported by raw investigative material, reports of second-hand conversations with in-

formants eager to please police, and miscellaneous matters extraneous to the conviction or trial. I rejected these papers for two reasons: they were brought to me ex parte and the allegations were both unfair and unreliable.

The Sentencing Commission has elevated this sort of procedure to a lawful level, only changing the method of transmission: delivery to the probation officer for inclusion in the PSR and furnishing that report to the defendant for objection or comment, rather than direct delivery to the sentencing judge. To the dissenters, such procedures in the circumstances of this case lack constitutional legitimacy.

The precedent established here by the majority portends great erosion to the fragile concept of liberty. One might envision a Congress as part of "a war on crime" and its preoccupation with heavy prison sentences as a quick solution thereto, imposing maximum prison terms of twenty, thirty or forty years for almost any felony, and leaving it to the Sentencing Commission by guideline to gradate sentences below the statutory maximum. Thus, applying the procedures used in this case, a person picked up and charged with a relatively innocuous crime could face years and years of imprisonment on allegations and slight proof of other miscellaneous misconduct without any constitutional protections. This would follow from a court ruling that the miscellaneous misconduct amounts to "sentencing factors," and not criminal conduct.

The publication of the majority opinion represents a sad day in the jurisprudence of this court. It makes dead many of the magnificent benefits of liberty contained in the fifth and sixth amendments to the Constitution. That liberty which the language of the Constitution has granted to all persons has now, in part, been taken away.

Accordingly, we dissent.

---

7. If we accept the majority's rationale, a government prosecutor could charge any crime and add others of any type. Even the Sentencing Commission does not go that far. *See* U.S.S.G. §§ 1B1.3(a)(2), 3D1.2(d).

 The transmutation of eight offenses into one is demonstrated in the majority's reliance on *McMillan.* In that case, use of the gun was part

of the crime, and "visible possession is a simple, straightforward issue susceptible of objective proof." *McMillan*, 477 U.S. at 84, 106 S.Ct. at 2415. The language about the "circumstances of an offense" does not support the majority, but, read in context, can be understood to imply that conduct not part of the crime charged requires a separate notice, trial and conviction.

LAY, Senior Circuit Judge, dissenting.

I am pleased to join the dissents of Senior Judge Bright as well as Judge Beam.

The alleged goal of the Sentencing Commission in providing the relevant conduct guidelines as its "cornerstone" was to reduce unwarranted disparity. The present disagreement by this en banc court reinforces the observation that "disparity resulting from section 1B1.3 is flourishing in the federal courts, and the longer the Commission hews to its present course, the more courts can be expected to diverge from that course and disagree among themselves as to its fairness." Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers*, 101 Yale L.J. 1681, 1715 (1992). There can be little question that relevant conduct guidelines "reduce visibility and candor in sentencing." *Id.* at 1714.[1] The relevant conduct guidelines not only serve as a source to stretch principles of fairness beyond constitutional boundaries, *see* Arnold, C.J. dissenting opinion in *U.S. v. Wise*, 976 F.2d 393 (8th Cir.1992), but place unconscionable sanctions for the further dehumanization of individuals caught up in the federal criminal process. One would think that the Congress of the United States would recognize the unauthorized actions of the Sentencing Commission in invoking, *sua sponte*, the relevant conduct guidelines when noting that every foreign country and every state of this nation that has considered relevant conduct guidelines has rejected them. Relevant conduct guidelines are a political aberration of our times and repugnant to the basic principles of fair process and procedure traditionally thought to be indigenous to our federal criminal laws.

1. As Professor Freed observed, the relevant conduct guidelines "exacerbate discrimination between well-represented defendants, for whom a careful bargain fixes the parameters for a predictable sentence, and less fortunate defendants who, inadequately represented, enter an untutored plea unaware of the relevant conduct consequences that may follow." *Id.*